UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>　　Plaintiff,<br><br>　　v.<br><br>MIGUEL MONTERO,<br>　　Defendant. | )<br>)<br>)<br>)<br>)　C.A. No. 22-CR-00073-JJM-PAS<br>)<br>)<br>)<br>) |

MEMORANDUM AND ORDER

**JOHN J. MCCONNELL, Jr., United States Court Chief Judge**

Before this Court is Defendant Miguel Montero's Motion to Dismiss the Indictment with Prejudice. ECF No. 56. Mr. Montero claims that his rights under the Interstate Agreement on Detainers Act ("IAD") have been violated. For the reasons stated below, this Court DISMISSES the Indictment without prejudice.

I.　BACKGROUND

On May 24, 2022, Mr. Montero was convicted of first-degree child molestation in Providence Superior Court. This conviction arose barely a week after a criminal complaint filed in this Court charged Mr. Montero for engaging in illicit sexual conduct in foreign places and travel with intent to engage in illicit sexual conduct. ECF No. 3. Pursuant to a *writ of habeas corpus ad prosequendum*, Mr. Monteiro appeared in federal court for an initial appearance on June 13, 2022. *See* ECF No. 10. That same day, this Court issued an order for detention for Mr. Montero. ECF

No. 11.  Eventually, a federal grand jury indicted Mr. Montero and he pleaded not guilty at his July 27, 2022, arraignment in federal court.

On September 9, 2022, Mr. Montero received a 60-year sentence for his state conviction, with 30 years to serve at the Rhode Island Adult Correctional Institution ("ACI").  After his sentencing but before he filed this Motion, Mr. Montero appeared before this Court two times—pursuant to *a writ of habeas corpus ad prosequendum*.  His first appearance was for a February 2, 2023, hearing related to his retained counsel's motion to withdraw from representation.  Mr. Montero made his second appearance on August 2, 2024, for a hearing on his *new* counsel's motion to withdraw from representation.[1]  That same day, he executed a modified IAD waiver, in which he waived his rights under the IAD for his federal case but emphasized that the waiver did not apply to "any prior issues that may have arisen." ECF No. 52.  Over a month later, Mr. Montero filed this Motion to Dismiss the Indictment.

---

[1] Mr. Montero's second appearance was originally slated for July 25, 2024. However, the hearing was converted to a Zoom status conference with counsel after the ACI informed this Court that there was an administrative error related to bringing Mr. Montero to court.  During that conference, Mr. Montero's counsel advised this Court that Mr. Montero never waived his anti-shuttling rights under the IAD.  *See* Jul. 30, 2024, Text Order.  After learning there was no longer an impediment to Mr. Montero appearing in-person, this Court scheduled an in-person hearing on the motion to withdraw.

## II. DISCUSSION

Mr. Montero's arguments revolve around whether the government complied with (1) the IAD's procedures for acquiring custody of a prisoner serving a sentence in another state,[2] and (2) the IAD's "anti-shuttling" provision.

### A. Violation of Article IV(a) of the IAD

In relevant part, the IAD outlines that,

> The appropriate officer of the jurisdiction in which an untried . . . complaint is pending shall be entitled to have a prisoner against whom he has lodged a detainer and who is serving a term of imprisonment in any party State made available . . . upon presentation of a written request for temporary custody or availability to the appropriate authorities of the State in which the prisoner is incarcerated . . . [T]he court having jurisdiction of such . . . complaint shall have duly approved, recorded and transmitted the request [and] there shall be a period of thirty days after receipt by the appropriate authorities before the request be honored . . . .

18 U.S.C. App. 2 § 2, Art. IV(a). Mr. Montero alleges that the government violated this provision of the IAD when he was brought to federal court on February 2, 2023, because "he was not brought in through any proper channel under the IAD." ECF No. 56-1 at 4. The government counters that the IAD is implicated *only* when a prisoner is made to appear in federal court pursuant to the government's filed detainer, and here, Mr. Montero's appearances in federal court were pursuant only to *writs of habeas corpus ad prosequendum*. ECF No. 58 at 4. In his reply, Mr. Montero highlights that a detainer against him was filed on June 13, 2022, and it

---

[2] Of note, the federal government is included in the definition of "state" under the IAD. *United States v. Gouse*, 950 F. Supp. 2d 355, 358 (D.R.I. 2013), *aff'd*, 798 F.3d 39 (1st Cir. 2015).

existed at the time the February 1, 2023, *writ of habeas corpus ad prosequendum* was filed. ECF No. 59 at 1.

Generally, "the use of a detainer invokes the IAD[], [while] the use of a writ of habeas corpus ad prosequendum does not." *United States v. Casas*, 425 F.3d 23, 67 (1st Cir. 2005) (citing *United States v. Mauro*, 436 U.S. 340, 349, 98 (1978)). That said, "[a]fter a detainer is lodged, any subsequent writ issued against the same prisoner is a 'written request for temporary custody' under the IAD." *United States v. Gouse*, 950 F. Supp. 2d 355, 359 (D.R.I. 2013), *aff'd*, 798 F.3d 39 (1st Cir. 2015) (citing *United States v. Currier*, 836 F.2d 11, 14 (1st Cir. 1987)). Here, the government triggered the IAD when it filed the June 13, 2022, detainer against Mr. Monteiro pursuant to his federal charges. Accordingly, because the February 1, 2023, *writ of habeas corpus ad prosequendum* was filed *after* the detainer came into existence, it served as a "written request for temporary custody" under the IAD. *Gouse*, 950 F. Supp. 2d at 359. Mr. Montero does not explicitly explain *how* the IAD procedures were not followed when he was brought into federal court, leaving this Court to parse for the violation.[3] In any event, this argument is not dispositive because, as explained below, this Court finds that the government violated the IAD's "anti-shuttling" provision.

---

[3] Mr. Montero states that he neither requested his presence in federal court pursuant to the detailer nor waived his rights under the IAD. However, he does not specify or even provide examples of what procedures under the IAD the government failed to comply with when he was brought into federal court.

4

### B. Violation of IAD's "Anti-shuttling" Provision

The IAD's "anti-shuttling" provision is implicated when "an inmate is imprisoned in one state (the 'sending state'), and another jurisdiction (the 'receiving state') utilizes a detainer to obtain custody of the individual for proceedings on outstanding charges." *United States v. Gouse*, 798 F.3d 39, 43 (1st Cir. 2015) (citing 18 U.S.C. App. 2 § 2, Arts. II & IV(a)). In that scenario, the receiving state must hold a trial on the charges *before* it returns the defendant to the sending state or else the charges will be dismissed with prejudice. *Id.* (citing Art. IV(e)). Although, the IAD permits the option of dismissal without prejudice when the indictment is from the federal government. 18 U.S.C. App. 2 § 9(1).

Here, Mr. Montero argues that the government violated the "anti-shuttling" provision of the IAD because he—a state prisoner—was brought to federal court but was returned to state custody without either having a trial on his federal charges or waiving his rights under the IAD. ECF No. 56-1 at 5. The government does not contest that Mr. Montero was brought back and forth between federal and state custody without a trial on his federal charges but asserts that such acts did not violate the IAD because Mr. Montero was brought to federal court under *writs of habeas corpus ad prosequendum*. ECF No. 58 at 4.

As concluded above, the IAD was trigged after a detainer was lodged against Mr. Montero, thus converting any later writs into a request for temporary custody under the IAD. Once the government received temporary custody of Mr. Montero pursuant to the writ, it was not supposed to return Mr. Montero to ACI custody until

5

he had a trial on his federal charges. *See* Art. IV(e). Because such a trial was not held before Mr. Montero's return to the ACI, his rights under the IAD's "anti-shuttling" provision were violated.

### C. Dismissal Without Prejudice is Warranted

Violating the IAD's "anti-shuttling" provision would typically prompt this Court to dismiss the Indictment with prejudice. *See* Art. IV(e). However, because the federal government was the entity that filed the Indictment, this Court also has the option to dismiss without prejudice. 18 U.S.C. App. 2 § 9(1). When deciding whether to dismiss with or without prejudice, this Court shall consider certain factors including but not limited to "[t]he seriousness of the offense; the facts and circumstances of the case which led to the dismissal; and the impact of a reprosecution on the administration of the agreement on detainers and on the administration of justice." *Id.*

Mr. Montero does not contest that his federal charges involve serious offenses. However, he argues against dismissal without prejudice, asserting that such disposition would (1) simply allow the government to recharge the case, (2) not hold the government accountable to the IAD violations, and (3) signal to prisoners that their IAD rights will not be enforced. ECF No. 56-1 at 5. The government contends that dismissal should be without prejudice because (1) Mr. Montero suffered no prejudice from being shuttled from state and federal custody twice[4], (2) its IAD

---

[4] The Court does not suggest that the August 2, 2024 appearance in federal court was a second example of a shuttling violation.

violation was not intentional but due to a "miscommunication between court and ACI staff," and (3) Mr. Montero is charged with an "extremely serious offense involving a minor victim." ECF No. 58 at 5.

As the parties concede, the offenses involved in this case are serious. Mr. Montero is charged with engaging in illicit sexual conduct in foreign places and travel with intent to engage in illicit sexual conduct—offenses allegedly involving a minor victim. Such serious offenses support dismissing the Indictment without prejudice.

Moving on to the circumstances that led to this dismissal, it does not appear that the government's violations of the IAD were intentional or in bad faith. Rather, it appears that the government, while mistaken, believed the IAD was not implicated at all because Mr. Montero appeared in federal court pursuant to *writs of habeas corpus ad prosequendum*.[5] Such a mistake does not excuse the government's violations—which is why this Court is dismissing the Indictment in the first place. However, such an inadvertent mistake does not weigh toward dismissal with prejudice, especially when there is no showing that this mistake is part of a pattern of negligence from the government that would prompt this Court's need to deter. Mr. Montero does raise valid concerns that a dismissal without prejudice would give the government no incentive to comply with the IAD. But the disposition of this Indictment should give notice to the government not to make this mistake again. And

---

[5] The government's argument that the violations were because of miscommunications between court and ACI staff lack traction. That miscommunication related to why Mr. Montero did not appear in federal court for the July 25, 2024, hearing—not why Mr. Montero was returned from federal court to the ACI twice without a trial on his federal charges.

7

"[i]f there is a future violation of the IAD in the District of [Rhode Island] . . . the risk of a dismissal with prejudice will be increased." *United States v. Kelley*, 300 F. Supp. 2d 224, 234 (D. Mass. 2003), *aff'd,* 402 F.3d 39 (1st Cir. 2005) (citing *United States v. Pope*, 183 F. Supp. 2d 773, 777 (D. Md. 2001)).

Finally, it is important to consider the impact that reprosecuting Mr. Montero would have on the administration of justice and the administration of the IAD. This factor essentially requires this Court to decide "whether the IAD violation prejudiced the defendant." *Id.* (quoting *Pope*, 183 F. Supp. 2d at 778). Mr. Montero has not shown that *he* has suffered any prejudice from the IAD violations. As a result, it does not appear that reprosecution would adversely impact the administration of justice. *See United States v. Kurt*, 945 F.2d 248, 253–54 (9th Cir. 1991) (noting that the defendant's failure to show prejudice based on IAD violations supported lower court's conclusion that reprosecution would not impair the administration of justice).

As for the effects reprosecution would have on the administration of the IAD, Mr. Montero emphasizes that a dismissal without prejudice would be a signal to other defendants that their IAD rights will not be enforced. But, as noted above, the government will face an increased risk of dismissal with prejudice if it makes an IAD violation again. Thus, a dismissal without prejudice should *not* signal to the government that it is free to violate prisoners' IAD rights with impunity. Accordingly, reprosecution of Mr. Montero will not detrimentally affect the administration of the IAD.

8

The seriousness of Mr. Montero's charged offenses, the inadvertence of the government's IAD violation, and the minimal impact that reprosecution presents illustrate that the relevant factors point to dismissing the Indictment without prejudice.

### III. CONCLUSION

For the reasons stated above, this Court DISMISSES the Indictment without prejudice. (ECF No. 14).

IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

October 18, 2024